**UTICA MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**FIREMAN'S FUND INSURANCE COMPANIES, Defendant and Third-Party Plaintiff,**

v.

**Philip TURNER, Hoffman, Kavanaugh Securities Corporation and Lon Roy Kavanaugh, Jr., Third-Party Defendants.**

No. 81 Civ. 5605(MEL).

United States District Court, S.D. New York.

July 23, 1985.

Hendler & Murray, P.C., New York City, for defendant and third-party plaintiff.

Gaston, Snow, Beekman & Bogue, New York City, for third-party defendant Lon Roy Kavanaugh, Jr.; Martin P. Unger, Catherine A. Ludden, New York City, of counsel.

LASKER, District Judge.

Lon Roy Kavanaugh, Jr., a third party defendant in this action, moves for an award of attorney's fees from defendant and third party plaintiff Fireman's Fund Insurance Companies ("Fireman"). The motion is made pursuant to Federal Rule of Civil Procedure 11 and the inherent power of this Court. For the reasons set forth below, the motion is denied.

## I.

Utica Mutual Insurance Company ("Utica") brought this action against Fireman to recover payment on a fidelity bond issued by Fireman. Utica's claim was for reimbursement of bond trading commissions in the amount of $802,000 paid by it to Kavanaugh. Kavanaugh had been retained by Philip Turner, Utica's investment manager between 1976 and 1979, to act as broker-dealer in a series of "adjusted trading" transactions utilized to replace tax-exempt municipal bonds in Utica's investment portfolio with higher yield investment securities.

Fireman declined to make payment under the bond and Utica filed its complaint against Fireman alleging, *inter alia,* that Turner and Kavanaugh acted in concert to defraud Utica. Fireman then filed a third party indemnity claim against Turner, Kavanaugh, and Kavanaugh's company.

Kavanaugh contended that there existed no evidence of any conspiracy between Turner and himself to defraud Utica and, at the close of discovery, he moved for summary judgment to dismiss the third party complaint against him. Fireman opposed the motion by relying upon Utica's allegation of a Turner-Kavanaugh conspiracy to defraud Utica in order to assert that there was a fact question as to whether such a conspiracy existed. In addition, Fireman pointed to Kavanaugh's allegation that he relied upon Turner's implied and apparent authority as Utica's investment manager and to Utica's claim that Kavanaugh and Turner acted in concert, to argue that a further fact question existed "as to whether, in the circumstances, Kava-

naugh reasonably relied on Turner's claim of authority and whether he made sufficient inquiry to determine the actual scope of Turner's authority." *See* Fireman's Statement Pursuant to Civil Rule 3(g) of the United States District Court for the Southern and Eastern Districts of New York dated Feb. 24, 1984, *reprinted in,* Kavanaugh's Notice of Motion, filed Sept. 11, 1984, at Exhibit C.[1] The latter argument was accepted as a basis for denying Kavanaugh's motion. *See Utica Mutual Insurance Co. v. Fireman's Fund Insurance Companies,* No. 81 Civ. 5605(MEL) (S.D.N.Y. Mar. 14, 1984) (endorsement).

Soon afterwards, the action proceeded to trial. Following the close of Fireman's case, Kavanaugh's motion to dismiss the third party claim against him was granted on the grounds that Fireman had not established by a preponderance of evidence Kavanaugh's bad faith and there existed no evidence of a conspiracy between Turner and Kavanaugh. *See* Trial Transcript, at 778–79. Although in reaching this decision, we did not expressly pass upon the question whether, in light of the unusual nature of the "adjusted trading" bond transactions, Kavanaugh made sufficient inquiries to ascertain the scope of Turner's authority as the agent of Utica, we did agree with Fireman that the transactions were certainly "unusual." *See id.* at 775–79.

Utica's complaint was ultimately dismissed on the ground that Utica was barred from recovery because it had failed to comply with the notice provisions of Fireman's fidelity bond. This holding was affirmed on appeal. *See Utica Mutual Insurance Co. v. Fireman's Fund Insurance Companies,* 748 F.2d 118 (2d Cir. 1984). As a protective measure, Fireman also appealed the dismissal of its third party indemnity claim against Kavanaugh but the Court of Appeals found it unnecessary to address this issue because the claim was predicated on Fireman being held liable to Utica under the fidelity bond. *See id.* at 120, 124 & n. 7. In addition, the Court of Appeals declined to award Kavanaugh his costs and attorney's fees incurred on appeal because it did not agree with Kavanaugh that Fireman's appeal was frivolous. *See id.* at 120 & 124.

## II.

Kavanaugh argues he is entitled to attorney's fees because Fireman acted in bad faith in maintaining its third party claim after discovery had been completed in this case. He points out that two and one half years of discovery failed to produce any credible evidence supporting the allegation that he was involved in a conspiracy with Turner to defraud Utica. Kavanaugh emphasizes that as the basis for maintaining its third party action and opposing his summary judgment motion, Fireman relied solely on the conspiracy allegation in Utica's complaint and it did not even attempt to present evidence at trial to support its indemnity claim.

Fireman answers that it acted in good faith in pursuing its claim against Kavanaugh because evidence adduced at trial and through discovery revealed that Kavanaugh's company carried out the disputed bond transactions; that Kavanaugh admitted that the "adjusted trading" program was an anamolous activity; that Kavanaugh made no attempt to determine from other Utica officials whether Turner was in fact authorized to conduct the "adjusted" trades; and that Kavanaugh stated to Turner that Turner's letter to Kavanaugh authorizing Kavanaugh to undertake the trades would be "kept in strict confidence." Fireman also notes that since Utica presented expert testimony at trial to establish the "adjusted trading" was an unlawful activity, it might have been possible to recover against Kavanaugh on the theory that he performed no legitimate activity for Utica, or on an indemnity theory had Fireman been found liable to Utica. Fireman asserts further that a reasonable basis existed for maintaining Kavanaugh's sta-

---

**1.** In further support of its contention, Fireman submitted an additional memorandum in the form of a letter dated March 1, 1984. *See* Kavanaugh's Notice of Motion, at Exhibit D.

tus as a third party defendant for the trial because Kavanaugh's summary judgment motion was denied after all discovery in the case had been completed.

## III.

■ Under the "American Rule" governing the allocation of litigation costs, the presumption is against an award of attorney's fees to a prevailing party. However, among the exceptions to the rule are cases in which a plaintiff brings or maintains an action without adequate factual basis and in bad faith. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975); *Tedeschi v. Smith Barney, Harris Upman & Co.*, 757 F.2d 465, 466 (2d Cir. 1985) (per curiam); *Nemeroff v. Abelson*, 704 F.2d 652, 654 (2d Cir.1983). The Court of Appeals for this Circuit has held that in order to find bad faith there must be "clear evidence" that the claim is "entirely without color and made for reasons of harassment or delay or for other improper purposes." *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir.1977); *see also Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985).

■ To determine whether a claim is "colorable" for the purpose of establishing whether or not bad faith exists, "[t]he question is whether a reasonable attorney could have concluded that facts supporting the claim *might be established*, not whether such facts actually *had been established*." *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980) (emphasis in original); *see also id.*, 704 F.2d at 658–59 n. 4 ("A colorable claim must be based upon some evidence from which an attorney can reasonably expect to build a case.") The inquiry is not confined to an examination of the strength of the claim at the time the action is commenced, but continues throughout the course of the litigation. Even if a sufficient factual basis exists to support an initial pleading, attorney's fees may nonetheless be awarded against the party asserting the claim if "during the litigation and prior to dismissal [of the claim], sufficient facts become available [to the party] to demonstrate that a failure at that point to withdraw the action necessarily amounted to bad faith." *Nemeroff v. Abelson, supra*, 620 F.2d at 350–51; *see also id.*, 704 F.2d at 655.

While Federal Rule of Civil Procedure 11 also mandates awards of attorney's fees, the Rule is directed at attorneys or parties who sign pleadings, motions and other papers without reasonable belief that the papers are well grounded by fact or warranted by existing law. *See generally Eastway Construction Corp., supra*, 762 F.2d at 253–54. The focus of inquiry under the Rule is therefore the attorney's and/or party's reasonable belief at the time the pleading, motion or other paper was filed, not at some later date when developments during discovery or at trial reveal no basis for this belief. This view is borne out by the Notes of the Advisory Committee on Rules which state that "[t]he court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was *submitted*." Fed.R.Civ.P. 11, Notes of Advisory Committee on Rules (emphasis added); *but see* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 189 (1985) ("To persist in claims or defenses beyond a point where they could no longer be considered well-grounded in fact may violate [Rule 11.]") (footnote omitted); Kobak & Barrett, *Amended Rule 11 and Antitrust Litigation*, N.Y.L.J., July 22, 1985, at 4, cols. 4–5. We accordingly conclude that the determination whether Kavanaugh is entitled to recover attorney's fees is limited to an evaluation of whether Fireman's decision to commence and maintain its suit against him falls within the bad faith exception of the "American Rule."

## IV.

■ As discussed above, a fact question determined to exist at the time Kavanaugh's summary judgment motion was de-

nied was whether Kavanaugh sufficiently inquired into the scope of Turner's apparent authority and whether Turner could reasonably rely upon Turner's representations. The issue of whether Kavanaugh was under an obligation to inquire into the scope of Turner's authority as Utica's agent is based upon the principle that a third party must inquire into a corporate agent's apparent authority to bind a corporation in transactions of an "extraordinary" nature. *See Ford v. Unity Hospital,* 32 N.Y.2d 464, 470, 472–73, 299 N.E.2d 659, 664, 346 N.Y.S.2d 238, 244 (1973) ("The mere creation of an agency for some purpose does not automatically invest the agent with 'apparent authority' to bind the principal without limitation....") (citations omitted); *Lee v. Jenkins Brothers,* 268 F.2d 357, 365 (2d Cir.), *cert. denied,* 361 U.S. 913, 80 S.Ct. 257, 4 L.Ed.2d 183 (1959) (company president "only has authority to bind his company by acts arising in the usual and regular course of business but not for contracts of an 'extraordinary' nature.") (footnote omitted); *see also General Overseas Films, Ltd. v. Robin International, Inc.,* 542 F.Supp. 684, 690 (S.D.N.Y. 1982), *aff'd mem.,* 718 F.2d 1085 (2d Cir. 1983).

■ Apparent authority bars a corporation from disavowing the transactions of its authorized agent and, as the Court of Appeals for this Circuit has explained:

Apparent authority is essentially a question of fact. It depends not only on the nature of the contract involved, but the officer negotiating it, the corporation's usual manner of conducting business, the size of the corporation and the number of its stockholders, the circumstances that give rise to the contract, the reasonableness of the contract, the amounts involved, and who the contracting third party is, to list a few but not all of the relevant factors.

*Lee v. Jenkins Brothers, supra,* 268 F.2d at 370 (footnote omitted); *see also id.* at 366.

■ Denial of Kavanaugh's summary judgment motion was premised upon this question of fact. A finding that the "adjusted trading" transactions were indeed "extraordinary," within the meaning of the cases cited, might have established the absence of Turner's apparent authority to bind Utica, and, as discussed below, might have obliged Kavanaugh to indemnify Fireman. Although our determination at the close of Fireman's case that the "adjusted" trades were "unusual" was in itself not enough to prevent the dismissal of Fireman's third party claim against Kavanaugh, the finding is sufficient to preclude awarding Kavanaugh attorney's fees under the bad faith exception to the "American Rule."

The underlying issue framed by our disposition of Kavanaugh's motion for summary judgment was whether the "adjusted" trades were "extraordinary" so as to raise doubts about Turner's apparent authority; to defeat Kavanaugh's contention that he relied upon Turner's authority as Utica's investment manager in executing the transactions; and to establish a possible basis for Kavanaugh's liability to Fireman. While the finding of the "adjusted" trades to be "unusual" did not render them as "extraordinary" within the meaning of the cases, the finding does demonstrate that Fireman could reasonably have concluded that its claim against Kavanaugh "might be established" and that its decision not to withdraw its claim against Kavanaugh before the claim was dismissed did not amount to bad faith. *See Nemeroff v. Abelson, supra,* 620 F.2d at 348, 350–51; *id.,* 704 F.2d at 658–59.

We are not unmindful that no evidence or totally insufficient evidence of a Turner-Kavanaugh conspiracy to defraud Utica was introduced at trial and that this fact served as the basis for dismissing Fireman's claim against Kavanaugh. *See* Trial Transcript, at 779. In addition, we recognize the reasons why Kavanaugh believes himself entitled to attorney's fees in light of our finding no evidence of a Turner-Kavanaugh conspiracy to defraud Utica. *See id.* However, because Fireman acted reasonably in maintaining its claim against

Kavanaugh in an effort to show that the "adjusted" trades were "extraordinary," and that therefore Kavanaugh had an obligation to check on Turner's authority, we find that Fireman's conduct does not constitute conduct warranting an award of attorney's fees.

Kavanaugh's motion is denied.

It is so ordered.