Shannon **CHRISTENSON**, Respondent,

v.

James **MILDE**, d.b.a. **Rocky Mountain Homes**, Appellant,

**Harvey Tidemann**, Respondent.

No. C8–86–955.

Court of Appeals of Minnesota.

March 24, 1987.

Patrick J. Leary, Quarnstrom, Doering, Pederson, Leary & Murphy, Marshall, for respondent Christenson.

Roger E. Petersen, Petersen & Orwoll, Rochester, for appellant.

Lawrence D. Olson, Roseville, for respondent Tidemann.

Heard, considered, and decided by WOZNIAK, P.J., and LESLIE and RANDALL, JJ.

## OPINION

WOZNIAK, Judge.

Appellant James Milde, d/b/a Rocky Mountain Log Homes, appeals from a judgment granting respondent Shannon Christenson damages for negligence and breach of implied warranty on the purchase of materials and construction of a log home. We affirm.

## FACTS

In 1982, Christenson contacted Rocky Mountain Homes in Hamilton, Montana, about constructing a log home. Rocky Mountain Homes placed him in contact with its Minnesota dealer, James Milde. Christenson inspected Milde's log home in Byron, Minnesota, and met with him several times, explaining his cost limitation of $90,000. Milde suggested a log home similar to his own, but wider, and within Christenson's cost range. Milde estimated that all construction costs and materials would cost $83,000, but, in any case, would be less than $90,000.

Christenson accepted this plan, intending to be his own general contractor. Milde hired a drafter to prepare the blueprints. He also recommended Harvey Tidemann to Christenson as a person experienced in building log homes. Milde stated that Tidemann and "four strong backs" could build the log home in two weeks.

Based upon Milde's statements, Christenson contracted to purchase a log home and door package for $37,000. In addition, Christenson contracted to pay for transportation of two truckloads of logs to the construction site.

The log package was delivered by truck the first few days of November 1983. It consisted of three truckloads, one more than Christenson contracted to pay for. When Christenson mentioned the two-week completion date, Tidemann laughed and stated that the house could not be done in two weeks. Construction began in November 1983 and continued intermittently into April 1984. The original completion date of Thanksgiving 1983 was continually extended, due to weather problems and Tidemann's absences.

After construction was begun, Christenson found that Tidemann failed to order sufficient notched logs. Tidemann had to notch about 70 logs, while the other men worked unsupervised or stood idle. One unsupervised worker cut a window in the wrong place, and it took two days to repair.

Tidemann had also ordered too many unnotched logs and, so that logs would not be left over, recommended adding to the height of the house. With reservations, Christenson consented to this modification which changed the pitch of the roof. Christenson later asserted that the modified pitch contributed to the leaking problem. Christenson complained throughout construction about delays and increased cost.

After paying Tidemann about double the estimated cost of his labor, in late February 1984, Christenson refused to pay Tidemann more money. Christenson had spent in excess of $130,000 on labor and materials, and the house was uncompleted.

Christenson moved into the house in March 1984. Immediately the walls began leaking when it rained and the stain on the inside of the house became discolored due to a defective waterproofing product. When it rained or snowed, Christenson pushed towels into the cracks between the logs and around the windows and doors. Outdoor walls appeared to be shifting so that sheetrock cracked and doors would not close. Windows had warped and would not close completely. Several beams sagged up to one inch. The handcut saddle joints leaked and gapped. The octagon windows were poorly constructed and assembled.

Christenson brought this action alleging negligence and breach of implied warranty. The trial court found Milde negligent in failing to order the correct number of notched logs, and awarded Christenson $500 against Milde for wages paid to idle workers and errors made by unsupervised workers. The court also found Milde was either negligent in supplying defective plans or breached an implied warranty by supplying defective beams. It awarded Christenson $2,000 to fix the cracked sheetrock and warped doors caused by the sagging beams. Finally, the trial court found that Milde breached an implied warranty by providing a defective waterproofing agent and awarded Christenson $10,000 to repair the damage. The trial court failed to make express conclusions of law, although the intended conclusions of law are implicitly expressed in the findings and in the judgment.

## ISSUES

1. Did sufficient evidence justify the trial court's findings and damage award?

2. Will this court review alleged procedural and pleading defects when appellant failed to bring a posttrial motion for new trial or JNOV?

## ANALYSIS

1. Milde argues insufficient evidence supports the trial court's finding that the failure to order the correct number of notched logs constituted negligent breach of contract. In Minnesota, courts do not recognize negligent breach of contract; therefore, the trial court's theory for granting the award was erroneous. *See Wild v. Rarig*, 302 Minn. 419, 440, 234 N.W.2d 775, 789 (1975), *cert. denied*, 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976).

■ Even though the trial court improperly labeled the action as negligent breach of contract, the facts support the findings of breach of contract and the trial court correctly applied the breach of contract measure of damages. Awarding damages under the breach of contract theory would be correct because Milde breached the contract by failing to deliver the necessary materials to build the log home. In a breach of contract action, the damage award is the monetary amount sufficient to place the plaintiff in the same situation as if the contract had been performed. *E.g., Sprangers v. Interactive Technologies, Inc.,* 394 N.W.2d 498, 503–04 (Minn.Ct.App. 1986) (quoting *Paine v. Sherwood,* 21 Minn. 225, 232 (1875)), *pet. for rev. denied* (Minn. Nov. 19, 1986). Christenson paid wages and suffered damages in the amount of $500 for the failure to order the correct materials. The record supports a finding of breach of contract, and the measure of damages was proper; accordingly, we choose not to remand for the trial court to correctly label the action under which it awarded damages.

■ Regarding the breach of warranty, Christenson states the log house leaked because Milde supplied a defective waterproofing agent. Milde argues Christenson's improper application of the stain and the butyl caused the leaking. The trial court judge found Milde liable for breach of implied warranty, based on the defective waterproofing agent. The trial court did not specify whether it found liability under the warranty of merchantability or fitness for a particular purpose. At least as to a breach of an implied warranty of merchantability, the trial court was not clearly erroneous in finding liability for the breach. An implied warranty of merchantability requires that the goods be fit for the ordinary purposes for which the goods are used. Minn.Stat. § 336.2–314(2) (1984). Under this warranty, a breach may occur even though the merchant did not know of the defect. *Id.* Here evidence showed that the butyl caused waterproofing problems on other homes.

In addition, a warranty of merchantability arose because of the course of dealing or usage of trade. *See id.* § 336.2–314(3). Testimony indicated that, in the trade, a distributor of building materials would check the materials upon arrival and later make certain the materials were not defective, or, if defective, replace them. In this case, by not checking the materials at any time, it was not clearly erroneous to find that the butyl was not fit for the ordinary purpose of waterproofing and that Milde breached the implied warranty of merchantability arising from a usage of trade.

■ Regarding the leaking and warped windows, the trial court found that the failure of the butyl material to properly seal the logs accounted for the peeling and leaking, which in turn caused the windows to warp. Christenson paid Milde $2,000 for "real good, top quality windows at cost." Within a month of installation, the sashes were bowed and the latches would not close. Sufficient evidence supports the conclusion that the inadequate waterproofing caused the windows to leak, resulting in damages of $2,000 for window replacement cost.

■ The record also showed that the ceiling beams supporting the second floor failed either because the beams themselves were defective or because defective plans required the beams to span too great a distance. Based on the record, the trial court was not clearly erroneous in finding that Milde is liable, whether the beams failed because of breach of warranty or negligence in the preparation of the plans.

■ Regarding the computation of damages, evidence showed the cost of caulking, restaining, replacement of windows, french doors, and sheet rock would cost $12,000. Because sufficient evidence demonstrated Milde's liability, the trial court's finding that the measure of damages for breach of warranty is the replacement cost, and awarding the damages accordingly, was not clearly erroneous.

■ 2. Milde alleges that Christenson's complaint is fatally defective because he

**614**

failed to specifically plead general, incidental, or consequential damages, or a breach of implied warranty. Milde also objects to the court's view of the house in the absence of the parties. When an appealing party has made no motion for new trial or JNOV, the only questions for review are whether the evidence sustains the findings of fact and whether such findings of fact sustain the conclusions of law and the judgment. *Pickar v. Erickson,* 382 N.W.2d 536, 538 (Minn.Ct.App.1986). Therefore, absent a motion for new trial or JNOV, allegations of procedural and pleading defects are not reviewable.

### DECISION

The trial court is affirmed.