The **CANDLEWOOD OBSTETRIC–GY-NECOLOGIC ASSOCIATES, P.C. RE-TIREMENT TRUST, et al., Plaintiffs,**

v.

**SIGNET BANK/MARYLAND,
et al., Defendants.**

Civ. A. No. HAR 91–2581.

United States District Court,
D. Maryland.

Oct. 5, 1992.

Holly Lindeman, Brocato, Price and Bushel, Baltimore, Md., for plaintiffs.

Steven K. Fedder and Russell J. Pope, Treanor and Pope, Fallston, Md., Ava E. Lias–Booker, Weinberg & Green, Paul W. Grimm, Niles, Barton & Wilmer, Baltimore, Md., Joseph A. Ingrisano, Gilbert W. Boyce, Kutak Rock, Washington, D.C., for defendants.

## MEMORANDUM OPINION

HARGROVE, District Judge.

Presently before the Court are the summary judgment motion submitted by Defendants Signet Bank/Maryland ("Signet"), Maryland National Bank and Bank of

America and the summary judgment motion submitted by Defendant Prudential Securities Incorporated. The Court has considered said motions and the opposition thereto and accompanying memoranda. No hearing is deemed necessary. Local Rule 105.6.

### FACTS

The Plaintiffs in this action are the Candlewood Obstetric–Gynecologic Associates, P.C. Retirement Trust, ("Candlewood") and its four Trustees, Drs. Kevin Mitchell, Gerard Foye, John McGrade and Paul DiGrazia, and Dr. Anthony Borrelli, a participant of Candlewood. Candlewood is an employee benefit plan funded by contributions from Candlewood Obstetric Gynecologic Associates P.C. ("Candlewood P.C."), a professional corporation of physicians domiciled in the State of Connecticut. On June 25, 1985, Candlewood P.C. and the Trustees made the Retirement Trust Agreement creating Candlewood. During the relevant time period, Candlewood had assets of approximately $2,000,000.

Defendant Signet bank is a banking corporation organized under the laws of the State of Maryland with its principal offices in Baltimore, Maryland.

Defendant Steven Burkowske is a citizen of the State of Maryland, and purports to be an actuary and a specialist in the administration of employee benefit plans like Candlewood.

Defendant Prudential is a corporation organized under the laws of the State of New York, with its principal place of business in New York, New York.

Defendant Maryland National Bank is a national banking corporation with its principal office in Baltimore, Maryland.

Defendant Bank of America is a national banking corporation with its principal offices in San Francisco, California.

The gravamen of Plaintiffs' complaint is that Burkowske embezzled Candlewood funds, a charge which is undisputed, and that the misdeeds of Prudential and defendant banks are largely responsible for the embezzlement, a charge which is vigorously disputed. The following events lead to Plaintiffs' lawsuit against the defendants.

Candlewood invests the bulk of its funds as a pool through brokerage firms. On or about March 1, 1985, Candlewood, by its Trustees, opened an investment account at Prudential through Stephen Mitchell, Prudential's account executive and the brother of one of the Trustees, Dr. Kevin Mitchell. Shortly thereafter, the Trustees of Candlewood retained Steven Burkowske as Candlewood's plan administrator. Stephen Mitchell provided the Trustees with Burkowske's name. The position of plan administrator was to involve preparation of annual statements of plan assets, reports required by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") and the participants' loan amortization documents. However, the Trustees never executed a formal agreement defining Burkowske's duties and responsibilities.

In 1986 Burkowske began handling contribution payments to Candlewood's investment account. Trustees and Candlewood P.C. made contributions to Candlewood through the Burkowske's company, Retirement and Benefit Analyst, Inc., ("RBA"). From its formation in June, 1985, Burkowske was the President and sole owner of RBA. The company was retained by Candlewood in July, 1985, to perform administrative functions.

On at least four occasions in 1986 and 1987, Candlewood P.C. issued checks, made payable to RBA, representing trust contributions to the Candlewood investment account at Prudential. Two checks dated October 2, 1986 and June 15, 1987, were deposited into a Burkowske account at Loyola Federal Savings and Loan Association. A September 1, 1987 trust contribution check was deposited into commercial checking account at Signet entitled RBA # 21731963 ("RBA Account").[1] The three Trust contri-

---

1. The RBA account, one of two accounts which Burkowske opened, was a commercial checking account opened on or about July 1, 1987. Bur-

kowske later opened a money market savings account, "Retirement and Benefit Analyst, Inc./Candlewood" ("RBA/Candlewood") in

bution checks were never received by Prudential.

An August 18, 1987 check, in the amount of $100,000, was endorsed by Burkowske and sent to Prudential on August 28, 1987. Each contribution check was drawn on the Candlewood P.C. account at Union Trust Company and was signed by a physician authorized to sign on behalf of Candlewood P.C. All of the checks were endorsed by Burkowske.

Burkowske also handled disbursements from the Candlewood investment account. On many occasions Trustees contacted Burkowske or Candlewood P.C. Office Manager, Dianne Fleischer, in order to obtain funds from the Candlewood account. Burkowske contacted Candlewood's broker who issued checks to Burkowske or to Fleischer, who would forward the check to Burkowske. Upon obtaining the checks payable to the individual participant, Burkowske forwarded them to the plan participant.

In 1986 Prudential instituted two changes in its operations which impacted Candlewood. First, Prudential account executive Richard Zink took over the Candlewood account at Prudential. Second, Prudential required that checks disbursed from the account be made payable to Candlewood, and not to the individual plan participant. As a result of the changes, it took longer to obtain checks from Prudential, and some participants encountered difficulty in negotiating their checks.

In 1987, Burkowske began issuing checks, from RBA's operating account at Signet Bank, to plan participants. This practice, which continued through 1990, enabled plan participants to receive their monies more quickly. Prudential processed and forwarded checks, intended for plan beneficiaries, but payable to Candlewood, to Burkowske, who in turn endorsed the checks and deposited them into the RBA account at Signet. Burkowske then issued an RBA check or cashier's check to the plan participant. With few exceptions, plan participants who requested a loan or distribution received it—usually in the May, 1989, with a transfer of funds from the

form of an RBA check or cashier's check purchased by RBA.

On many occasions, Burkowske overstated to Prudential the withdrawals requested by plan participants. Acting on Burkowske's instructions, Prudential drew checks on the Prudential accounts in amounts greater than the amounts sought by participants. Burkowske directed the participants, who received the larger than expected checks, to draft instruments payable to the order of Candlewood in the amount of the difference. The participants then returned the items to Burkowske. Burkowske and RBA delivered the items to Signet with instructions to collect and credit the proceeds thereof to RBA's personal account.

As a result of the above procedures, items totaling hundreds of thousands of dollars were paid by Signet, which held Burkowske's RBA account, on endorsements of Candlewood by Burkowske. Signet in turn obtained payments of over 100,-000.00 from the other payor banks.

Plaintiffs filed this action to recover the losses sustained by Candlewood resulting from the alleged misdeeds of the Defendants.

Plaintiffs maintain that Burkowske and RBA engaged in a systematic scheme to convert Candlewood's assets to their own use. Plaintiffs allege that Burkowske obtained, through intentional misrepresentation, checks payable to Candlewood, forged Candlewood's indorsement, and then presented the checks to the defendant banks for deposit, collection, and payment. Plaintiffs further allege that Burkowske misrepresented to the plaintiffs that RBA maintained an escrow account for the sole benefit of Candlewood, thereby inducing the plaintiffs to make contribution checks payable to RBA rather than to Candlewood. Burkowske plead guilty to various felonies, and is currently serving time in a federal penitentiary.

Plaintiffs maintain that Prudential was negligent in handling the checks which Burkowske embezzled over a four-year pe-

RBA account.

riod. Specifically, Plaintiffs assert that Prudential breached it's obligation by delivering items belonging to Candlewood directly to Burkowske and to RBA, and not to the plaintiffs. Plaintiffs allege that Prudential acted improperly by drawing checks on the Prudential account in amounts greater than the amounts sought by participants. In doing so, Prudential acted in accordance with Burkowske's instructions, but without confirmation by the plaintiffs.

Plaintiffs allege that the defendant banks paid checks on Burkowske's and RBA's forged indorsement of Candlewood, contrary to the makers orders, thereby converting the proceeds from Candlewood. Plaintiff maintains that Burkowske's endorsements of checks payable to Candlewood were unauthorized. Plaintiff alleges that Burkowske and RBA forged Candlewood's indorsement on checks payable to Candlewood, and delivered them to Signet with instructions to collect the same and credit the proceeds to RBA's account. This was done without the knowledge and contrary to the instructions of Candlewood. Signet, contrary to reasonable commercial standards of its business, credited the proceeds of collection to the RBA account.

## I

Defendant Banks and Prudential have filed separate motions for summary judgment, arguing that they are entitled to judgment as a matter of law. The Court will first address Prudential's motion for summary judgment.

Summary judgment will be granted when "there is no genuine issue as to any material fact, and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The underlying facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Courts do not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249, 106

S.Ct. at 2511. However, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510. The mere existence of a "scintilla of evidence" is not enough to frustrate a motion for summary judgment. In order to defeat a motion for summary judgment, the pleadings must show evidence in which the finder of fact could reasonably find for the party opposing judgment. *Id.*, 477 U.S. at 252, 106 S.Ct. at 2512; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Plaintiffs allege that Prudential breached its duty to the plaintiffs by disbursing checks from the Prudential account in excess of the amount requested by plan participants, by delivering the checks to Burkowske, and by failing to examine the cancelled checks disbursed from the Candlewood account. In conducting the above activities, without plaintiff's knowledge and consent, Prudential neglected to satisfy the standards of care applicable to the Defendant's business. According to the Plaintiffs, Prudential was a fiduciary which owed Candlewood "a duty to use reasonable care and to act in good faith, "and not to act "except in accordance with the principal's manifestation of assent." (Opposition, p. 11)

In response, Prudential asserts that in all of his dealings with Prudential, Burkowske acted as the plaintiffs' agent. Burkowske had actual authority to request and receive disbursements from the Prudential Candlewood account. Therefore, Prudential breached no duty owing to the plaintiffs.

An agency relationship is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf. Restatement (Second) of Agency § 1 (1958). An agent may be either an employee of the principal, or an independent contractor. *See Ivy H. Smith Co. v. Warffemius*, 201 Md. 367, 93 A.2d 764 (1953). Actual authority may be express or implied. It is created "by written or spoken words or other conduct which, reasonably interpreted, causes the agent to be-

lieve that the principal desires him so to act on the principal's account." Restatement (Second) of Agency § 26, at 100 (1958); 3 Am.Jur.2d Agency § 71, at 575 (1986).

■ Furthermore, it is widely recognized that "acquiescence by the principal in a series of acts by the agent indicates authorization to perform similar acts in the future." *Ft. Dodge Creamery Co. v. Commercial State Bank*, 417 N.W.2d 245, 246 (Iowa App.1987).

Prudential argues that Candlewood's practice, of using Burkowske to initiate the issuance of checks from Candlewood, is overwhelming evidence that Burkowske had actual authority to request checks from Prudential. *See, Hofherr v. Dart Industries, Inc.*, 853 F.2d 259, 262 (4th Cir. 1988) (In determining whether actual authority was granted, a critical issue is the intent of the parties which may be inferred by the agreements entered into and the actions of the parties). In fact, Candlewood had no other mechanism for obtaining checks from Prudential, during the period when Zink was in charge of the Prudential account.

■ The Court agrees with Prudential. Although plaintiffs argue otherwise, the actions of Candlewood and Burkowske clearly demonstrate that Candlewood actually authorized Burkowske to request Prudential to issue checks on behalf of Candlewood. The plaintiffs offers many arguments and affidavits in an attempt to defeat the motion for summary judgment. However, assertions in the form of legal conclusions and denials unsupported by documentation or specific facts, such as those offered by the plaintiffs, are insufficient to create issues of material fact that would preclude summary judgment. *SEC v. Bonastia*, 614 F.2d 908, 914 (3d Cir. 1980). Thus, Prudential's motion for summary judgment is meritorious.[2]

## II

■ Plaintiff brings a claim of conversion against the defendant banks. In order to sustain a claim for conversion, a plaintiff must show that the defendant bank paid the checks "on a forged endorsement." Md.Comm.Law Code Ann. § 3–419(1)(c). A forged endorsement is a signature "made without actual, implied or apparent authority." Md.Comm.Law Code Ann. § 1–201(43). Defendant banks argue that Burkowske had actual authority to endorse the checks at issue. It is widely recognized that an agent is authorized to endorse checks when the principal gives the agent certain duties or responsibilities which infer that he intended the agent to have the authority to endorse. A.L.R.2d 461.

In support of its argument that Burkowske had actual authority to endorse the checks, Defendant banks rely on the following.

The Trustees made substantial contributions to the Candlewood trust in the form of checks made directly payable to RBA.

The Trustees received individual and Candlewood bank statements and cancelled checks which revealed that checks payable to Candlewood Trust were being deposited into RBA accounts.

The Trustees and plan participants regularly received checks drawn on RBA's accounts for loans and disbursements.

■ In a letter dated November 12, 1987, Burkowske informed Fleischer, Candlewood P.C.'s Office manager, of his practice of endorsing Candlewood checks for deposit into his "escrow account" and of drawing greater sums than necessary to facilitate loans to trust participants. The general agency rule is that "a principal is charged with the knowledge of the agent acquired by the agent in the course of the principal's business." *Curtis Collins & Holbrook Co. v. United States*, 262 U.S. 215, 43 S.Ct. 570, 67 L.Ed. 956 (1923). As Fleischer, who is clearly an agent of the Trustees, had knowledge of Burkowske's

---

**2.** It should be noted that the Court believes that plaintiffs ratified all transactions in the Prudential account. Thus, their claims are barred on this ground as well. Defendant offered several

other theories which may have merit. However, it is unnecessary for the Court to address them here.

333

activities, the Trustees are credited with such knowledge.[3]

In March, 1990, Fleischer, Trustee Kevin Mitchell, and Stephen Mitchell learned of Burkowske's endorsement of a $25,000 check made payable to Candlewood. Burkowske deposited the check in his RBA account. None of the plaintiffs challenged Burkowske's authority to endorse Candlewood checks or to deposit the checks into an RBA account. To the contrary, six more checks made payable to Candlewood were sent, unendorsed, to Burkowske by Candlewood and plan participants.

In sum, Burkowske endorsed Candlewood checks for over four years without objection from the Plaintiffs. It is documented that Plaintiffs were well aware of Burkowske's activities, the very activities about which Plaintiffs now complain, but took no action to stop their employee. To the contrary, the Trustees retained Burkowske as their plan administrator and continued sending him unendorsed checks. Based on the evidence the Court concludes that Burkowske was authorized to endorse and deposit checks payable to Candlewood in the RBA account.

In opposition to the summary judgment motion, Plaintiffs offer arguments and several affidavits which contradict the record. Plaintiffs' affidavits and arguments constitute no more than unsupported denials in the form of legal conclusions and are insufficient to defeat defendants' motion for summary judgment. *Barwick v. Celotex Corp.*, 736 F.2d 946, 959–960 (4th Cir.1984). Thus, the Court finds that the defendant banks are entitled to judgment as a matter of law.[4]

### III

For the reasons discussed above, the summary judgment motion submitted by Prudential Securities Incorporated and the summary judgment motion submitted by

Signet Bank, Maryland National Bank, and Bank of America are granted.

It will be so ordered.

---

**3.** It should be noted that in her deposition, Diane Fleischer stated that the Trustees read the November 12th letter. (Fleischer deposition, Defendant Bank's opposition Exhibit # 9, p. 54.)

**4.** It should be noted that the Court believes that plaintiffs ratified all transactions with the de-

fendant banks. Thus, their claims are barred on this ground as well. Defendants offered several other theories which may have merit. However, it is unnecessary for the Court to address them here.