CALABRESE FOUNDATION, INC., a Colorado corporation, formerly known as Laradon Endowment Foundation, Inc., Plaintiff,

v.

INVESTMENT ADVISORS, INC., a Delaware corporation, Defendant and Third–Party Plaintiff.

v.

John HEARD, Third–Party Defendant.

Civ. A. No. 92–F–1795.

United States District Court, D. Colorado.

June 11, 1993.

Michael L. Smith, MaryBeth Sobel, Law Offices of Michael L. Smith, David A. Zisser, Berliner Boyle Kaplan Zisser & Walter, P.C., Denver, CO, for plaintiff.

Michael H. Berger, Waldbaum, Corn, Koff and Berger, P.C., Denver, CO, for defendant.

## ORDER REGARDING MOTION FOR SUMMARY JUDGMENT

SHERMAN G. FINESILVER, Chief Judge.

This is a case involving, among other claims, negligence and breach of fiduciary duty in an investment relationship. This matter comes before the Court on Defendant Investment Advisors, Inc.'s ("IAI") motion for summary judgment. Jurisdiction is based on 28 U.S.C.A. § 1332 (West Supp. 1992). The litigants have fully briefed the matter. For the reasons stated below, the motion is DENIED in PART and GRANTED in PART.

### I.

Plaintiff, Calabrese Foundation, Inc. ("Calabrese"), is a Colorado nonprofit corporation aimed at the education and development of disabled and mentally retarded persons.[1] Calabrese maintains a charitable trust for the benefit of the Laradon Hall Society, which runs vocational and residential programs for developmentally disabled persons. Calabrese has no employees and the mem-

---

1. All factual recitations in this order have been alleged in the litigants' pleadings.

bers of its Board of Trustees are all unpaid volunteers. Defendant, Investment Advisors, Inc., is a registered investments advisor located in Minneapolis, Minnesota. On March 23, 1982, Calabrese and IAI entered into an investment management agreement ("the Agreement") under which IAI was to manage funds held by Calabrese in a custodial account at Colorado National Bank ("the CNB account"). The Agreement was signed on behalf of Calabrese by Eugene Costello, president of Calabrese, and Jeremiah Connolly, secretary. The Agreement provided that IAI would act as investment advisor for Calabrese with the authority to manage account assets; IAI did not hold the assets themselves.

For several years IAI managed the funds in the CNB account and provided regular performance evaluation reports to Calabrese. Throughout this period of time, IAI received all its instructions from Costello. Costello was an attorney and all of his correspondence to IAI relating to Calabrese was sent on his law firm stationery. In September 1987, Costello notified IAI that funds might be needed out of the CNB account because of an embezzlement of funds by an ex-employee at Laradon Hall and to cover a one million dollar cash deficit at Laradon Hall. In June 1988, IAI received a telephone call from Costello directing IAI to communicate to CNB a request that $175,000 be transferred from the CNB account to Costello's law firm trust account at Colorado State Bank ("the trust account"). Following IAI's request that Costello confirm his request in writing, Costello sent a letter dated June 14, 1988. IAI communicated Costello's request to CNB and CNB wired the funds. In August 1988, IAI again received a phone request, then a letter from Costello. IAI conveyed his request to CNB, which wired the money to the trust account of Costello's law firm.

Calabrese did not discover the transfers until December 1988, during its annual audit. Calabrese had not previously noticed the transfers due to its policy of having account statements checked on a yearly basis, by an outside auditor, rather than on a monthly basis. In June 1989, Calabrese sent letters to CNB and IAI directing them to take Costello off their respective lists of "authorized individuals."

Calabrese sued IAI on September 9, 1992, alleging that IAI was negligent and breached its fiduciary duty by approving the funds transfers and thus allowing Costello to embezzle approximately $300,000. IAI joined several individuals as third-party defendants, all of whom have been dismissed with the exception of John Heard. IAI has now moved for summary judgment on numerous grounds, stating the action is barred by the statute of limitations and laches, Costello had apparent and actual authority to instruct IAI to act as it did, Colorado does not recognize a claim for negligent breach of contract, no claim for breach of an implied contract is possible where there exists an express contract, IAI did not initiate any transfer of funds and therefore did not breach its fiduciary duty, and Calabrese cannot state a claim for conversion because IAI did not possess or disburse Calabrese's funds, because Costello had authority to transfer funds, and because an action for conversion of funds requires that they be specifically identifiable.

## II. Summary Judgment Standard

Granting summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Ash Creek Mining Co. v. Lujan,* 934 F.2d 240, 242 (10th Cir.1991); *Metz v. United States,* 933 F.2d 802, 804 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 416, 116 L.Ed.2d 436 (1991); *Continental Casualty Co. v. P.D.C., Inc.,* 931 F.2d 1429, 1430 (10th Cir.1991). A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 429 (10th Cir.1990). Only disputes over facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Dayco Prods., Inc.,* 758 F.Supp. 630, 631 (D.Colo.1990).

In reviewing a motion for summary judgment, the court must view the evidence in the

light most favorable to the party opposing the motion. *Newport Steel Corp. v. Thompson,* 757 F.Supp. 1152, 1155 (D.Colo.1990). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.,* 933 F.2d 891, 892 (10th Cir.1991); *Mountain Fuel Supply v. Reliance Ins. Co.,* 933 F.2d 882, 889 (10th Cir.1991).

In a motion for summary judgment, the moving party's initial burden is slight. In *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the Supreme Court held that the language of rule 56(c) does not require the moving party to show an absence of issues of material fact in order to be awarded summary judgment. Rule 56 does not require the movant to negate the opponent's claim. *Id.* at 323, 106 S.Ct. at 2552. The moving party must allege an absence of evidence to support the opposing party's case and identify supporting portions of the record. *Id.*

Once the movant has made an initial showing, the burden of going forward shifts to the opposing party. The nonmovant must establish that there are issues of material fact to be determined. *Id.* at 322–23, 106 S.Ct. at 2552. The nonmovant must go beyond the pleadings and designate specific facts showing genuine issues for trial on every element challenged by the motion. *Tillett v. Lujan,* 931 F.2d 636, 639 (10th Cir.1991). Conclusory allegations will not establish issues of fact sufficient to defeat summary judgment. *McVay v. Western Plains Serv. Corp.,* 823 F.2d 1395, 1398 (10th Cir.1987).

In reviewing the evidence submitted, the court should grant summary judgment only when there is clearly no issue of material fact remaining. In *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11, the Court held that summary judgment should be granted if the pretrial evidence is merely colorable or is not significantly probative. In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court held that summary judgment is appropriate when the trial judge can conclude that no reasonable trier of fact could find for the nonmovant on the basis of evidence presented in the motion and the response. *Id.* at 587, 106 S.Ct. at 1356.

### III. Time Bars

■ IAI believes this action is barred by Colorado's two- and three-year statutes of limitations. *See* C.R.S. §§ 13–80–101(1)(a), (h) and 102(1)(a). Calabrese stands by Minnesota's six-year statute of limitations. Minn.Stat.Ann. § 541.05, subd. 1(1) and (4). IAI thus begins its argument by attempting to revisit an issue already ruled on by this Court. Specifically, contrary to IAI's assertions, Minnesota and not Colorado law applies to this action. To its detriment, IAI has regrettably ignored our prior statement on the matter; IAI's entire brief consists of citations to Colorado law.

■ When a conflict of law question arises in a diversity action, federal courts must apply the choice of law analysis of the state in which they sit. *Florum v. Elliott Manufacturing Co.,* 629 F.Supp. 1145, 1148 (D.Colo.1986). In Colorado, then, federal courts choosing between the laws of two different states must first determine whether the parties have provided for a choice of laws by contract.

■ Like any contract, the goal of construing a choice of laws provision is to determine the intent of the parties. *Metropolitan Sports Facilities Commission v. General Mills, Inc.,* 470 N.W.2d 118, 122–23 (Minn. 1991). Any ambiguity is to be construed against the drafter. *See Mrozik Construction, Inc. v. Lovering Associates, Inc.,* 461 N.W.2d 49 (Minn.App.1990). If no contractual provision exists, the court conducts a "significant relationship" test, analyzing various factors. *Mitchell v. State Farm Fire & Cas. Co.,* 902 F.2d 790, 793 (10th Cir.1990).

Here, there is a contractual provision which provides that "[t]his Agreement shall be construed, and the rights and obligations of the parties hereunder enforced, in accordance with the laws of the State of Minnesota." IAI believes this language provides for choice of law only with regard to the construction and enforcement of the Agreement itself, and not any litigation surrounding it. We are not persuaded by IAI's analysis of case law interpreting choice of law provisions

**1512**

either as an independent analysis of choice of laws or as a replacement for the parties' intent, which IAI wholly ignores. As to intent, we note that IAI initially argued before this Court that *Minnesota* law applies to this action and we note that IAI is a large institution with clients all over the country; it is logical to assume IAI selects its choice of law provision in order that it need conform to the laws of only one jurisdiction. Furthermore, it was IAI that selected the provision and any ambiguity in the provision must be construed against IAI.

Finally, the case law cited by IAI is not controlling. The cases cited by IAI, which hold that choice of law provisions relate only to the contract itself, deal with choice of law provisions much narrower than that at issue here. *See Caton v. Leach Corporation,* 896 F.2d 939 (5th Cir.1990) (construing provision stating "this Agreement shall be construed under the laws of the State of California" to mean that only the agreement itself was subject to California law); *Hercules, Inc. v. Martin Marietta Corporation,* 143 F.R.D. 266 (D.Utah 1992) (construing provision stating "[t]he Contract shall be governed by, subject to, and construed according to the laws of the State of Colorado" to mean that only the agreement itself was subject to Colorado law).

■ In any event, regardless of whether the contractual choice of law provision settles the matter, the result under Colorado's "significant relationship" test, *Florum,* 629 F.Supp. at 1148, is the same. Minnesota bears the most significant relationship to this litigation: (1) the Agreement was apparently signed by IAI in Minnesota, and perhaps actually formed there;[2] (2) for services performed in Minnesota; (3) by a Minnesota defendant; (4) which chose a Minnesota choice of law provision. Furthermore, when a contract calls for the performance of services, "Colorado presumptively applies the law of the state where the majority of the services are to be performed." *Sequa Corp. v.*

*Lititech, Inc.,* 780 F.Supp. 1349, 1351 (D.Colo.1992). That state was Minnesota.

Because Minnesota's six-year statute of limitations applies, this action is barred by neither a statute of limitations nor laches.

## IV. Costello's Actual or Apparent Authority

■ IAI claims it cannot be liable for following Costello's instructions to pass along transfer requests to CNB because Costello had both actual and apparent authority to make such requests. IAI argues Costello had actual and apparent authority[3] to request the transfer of funds by virtue of the fact that he was Calabrese's president and chairman of the Foundation Board; he signed both the Agreement and the custody agreement; he was an authorized signer to Calabrese's five accounts with First Interstate Bank of Denver, with the power to withdraw funds; he handled transfers of funds between Calabrese and Laradon Hall; and after Calabrese discovered Costello's embezzlement, it sent IAI letters directing IAI to remove Costello from their lists of "authorized individuals."

■ The existence and scope of the authority of an agent is usually a question of fact. *Utica Mutual Insurance Co. v. Fireman's Fund Insurance Companies,* 613 F.Supp. 1134, 1138 (S.D.N.Y.1985). Where the evidence of an agent's authority is not disputed, or different reasonable and logical inferences may not be drawn from such evidence, the question as to the existence of actual or apparent authority is one of law. *See Kelly v. Central Bank and Trust Co.,* 794 P.2d 1037, 1041 (Colo.App.1989); *Frank Sullivan Co. v. Midwest Sheet Metal Works,* 335 F.2d 33, 40 (8th Cir.1964).

### A. Actual Authority

■ We begin by noting that the Agreement does not, as IAI claims, contain an express grant of authority for the president

2. The parties dispute where the agreement was formed, but the Agreement itself states that it was "[a]greed and [a]ccepted in Minneapolis, Minnesota" by IAI. The argument for formation in Minnesota is therefore stronger than that for formation in Colorado.

3. IAI does not separate the two forms of authority in its argument, choosing to go back and forth between the two terms in asserting that Calabrese had both types of authority.

to order transfers of funds. Calabrese denies Costello's actual authority by citing as dispositive the deposition of Gunther Lippman, president of the Calabrese Board of Trustees, who stated that Costello had no actual authority. We cannot agree that a statement of opinion made so long after Costello's tenure is potentially dispositive of whether Costello had authority at the time. Calabrese next points to its corporate by-laws, which do not expressly give power over funds to the president while affording the treasurer the authority to control disposition of funds in accordance with the instructions of the Board of Directors. If the by-laws are not dispositive of the issue of actual authority, they at a minimum present a disputed issue of fact. In any event, most if not all of IAI's arguments for Costello's authority appear to be directed at his apparent authority.

**B. Apparent Authority**

■ Calabrese disagrees with every interpretation of the events that IAI claims gave it apparent authority. IAI, as the party claiming an act was done within the scope of an agent's authority, has the burden of proving that authority. *Utica Mutual,* 613 F.Supp. at 1138. The Restatement (Second) of Agency § 27 (1958) states apparent authority

> to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purported to act for him.

■ The existence and scope of an agent's authority to perform extraordinary actions, however, cannot be proven by the agent's acts or statements alone; rather, the party claiming reliance on the authority must make sufficient inquiry into the scope of apparent authority before reliance can be justified. *Utica Mutual,* 613 F.Supp. at 1138. We believe the transactions at issue here— unprecedented transfers of $300,000 of a charity's funds to a private law firm account—were extraordinary in nature. We do not believe IAI has borne its burden of showing the existence of Costello's apparent authority to request them.

■ We place no weight on the fact that Costello was Calabrese's president and chairman of the Foundation Board; the Agreement gives no express authority over funds to accompany that office.[4] The custody agreement similarly says nothing of Costello's authority. It is also irrelevant that Costello was an authorized signer to Calabrese's five accounts with First Interstate Bank of Denver, with the power to withdraw funds,[5] or that he handled transfers of funds between Calabrese and Laradon Hall. The authority to perform a few particular acts cannot be taken as an extension of authority to perform any and all acts, *Kenneally v. First National Bank of Anoka,* 400 F.2d 838, 842 (8th Cir.1968) (applying Minnesota law), particularly transactions of an extraordinary nature. *Utica Mutual,* 613 F.Supp. at 1138. Finally, whether Calabrese sent IAI letters directing IAI to remove Costello from its lists of "authorized individuals" is not dispositive as to authority to give instructions regarding funds where the letters advised IAI that Costello no longer had authority to give *any* instructions. Moreover, Calabrese's after-the-fact view of whether Costello had apparent or actual authority is irrelevant. Whether Costello had actual authority is a matter of an express or implied grant of authority; whether he can be held to have had apparent authority in the view of *IAI* is

4. Indeed, even if the Agreement did give such authority, IAI could just as reasonably, perhaps more reasonably, have thought the authority could only be used with the concurrence of the Secretary of Laradon Hall, who also signed the Agreement. *See Kenneally v. First National Bank of Anoka,* 400 F.2d 838, 841–42 (8th Cir.1968) (applying Minnesota law).

5. IAI claims that Costello's authority to withdraw funds from the First Interstate account shows he had authority to withdraw funds from the CNB account. Aside from the fact that authority to deal with one corporation says nothing about authority to deal with another, the First Interstate account is distinguishable: the agreement with First Interstate *expressly* provided that funds could be withdrawn by Costello *or* by Vice–President Joseph V. Calabrese or Secretary Rex Cross or Treasurer John Heard.

a question that does not depend on the opinions or potentially mistaken views of *Calabrese's* officers.

IAI's reliance on *Candlewood Obstetric–Gynecologic Associates, P.C. Retirement Trust v. Signet Bank/Maryland*, 805 F.Supp. 328 (D.Md.1992), is misplaced. In *Candlewood*, the Court found an agent had actual authority to request checks from a trust administrator because the agent had for several years held sole power to request checks from the administrator and had in fact done so. In the instant case, no such past pattern of similar transactions justifies an inference that Costello had the authority to dispose of any funds, and he certainly never made requests for extraordinary transactions, such as placing hundreds of thousands of dollars in his law firm account. The question of authority in this matter remains a factual dispute and that summary judgment in favor of IAI is inappropriate.

## V. Contractual Claims

### A. Negligent Breach of Contract

■ IAI first states Calabrese's claim for negligent breach of contract must fail both because neither Colorado nor Minnesota law support such an action. *See Bloomfield Financial Corp. v. National Home Life Assurance Co.*, 734 F.2d 1408 (10th Cir.1984); *Christenson v. Milde*, 402 N.W.2d 610, 612–13 (Minn.App.1987) (observing "[i]n Minnesota, courts do not recognize negligent breach of contract . . ."); *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775, 789 (1975) (damages for breach of contract limited to damages flowing from such breach unless circumstances show independent tort). More recently, however, the Minnesota Supreme Court has allowed suits in negligence for so-called "economic losses" where a contract underlies the relationship between the parties. *See McCarthy Well Company, Inc. v. St. Peter Creamery, Inc.*, 410 N.W.2d 312, 314 (Minn. 1987) (holding negligence action for economic losses not barred when contract is for performance of services); *Prichard Brothers, Inc. v. The Grady Company*, 428 N.W.2d 391, 392 (Minn.1988) (citing *McCarthy* to hold negligence not barred in service transactions).

■ IAI also contends that because it did not disburse or transfer any funds to Costello's account, it cannot be held liable in negligence. Whether IAI's alleged negligence in passing along Costello's unusual request for funds was a legal cause of Calabrese's loss, however, is a question of fact to be tried by the jury. A negligence action requires only a showing of duty, breach, proximate cause, and injury, *see Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 729 (Minn. 1990), and Calabrese has made sufficient allegations to make out a claim for negligence.

### B. Breach of Implied Contract

■ Calabrese claims that by virtue of its surrender of funds to IAI for the purpose of investment and management, there existed an implied contract of deposit between Calabrese and IAI, whereupon IAI impliedly agreed to disburse those funds only in accordance with Calabrese's instructions. Calabrese claims that where the implied agreement relates to something not covered in the express agreement, additional duties may arise by implication. Specifically, Calabrese states that a depository has a duty to a depositor to implement commercially reasonable procedures to process all transfer requests in accordance with the depositor's instructions, to verify their accuracy, and to act diligently to detect errors. *See Walker v. Texas Commerce Bank, N.A.*, 635 F.Supp. 678 (S.D.Tex.1986). IAI asserts that under Minnesota law, the existence of an express contract supersedes an action for implied contract. *See Roberge v. Cambridge Cooperative Creamery Co.*, 243 Minn. 230, 67 N.W.2d 400 (1954) (noting that "if *only* an express contract was alleged, recovery could not be had on the basis of Quantum meruit [implied contract] unless the issue was litigated by consent") (emphasis added); *Ecker v. Isaacs*, 98 Minn. 146, 107 N.W. 1053 (1906) (agreeing with trial court that "proof of an implied contract necessarily excludes a *contemporaneous* implied one in relation to the same matter" and therefore "a party who has declared on an express agreement cannot recover on proof of an implied contract") (emphasis added). We do not find these cases on point; *Roberge* speaks of cases in which *only* an express contract has been

alleged, and cannot be read to preclude alternative causes of action in any event, and *Ecker* refers to contemporaneously formed contracts, which Calabrese is expressly not alleging.

Calabrese cites a Colorado case invoked by both parties, *Schuck Corp. v. Sorkowitz,* 686 P.2d 1366, 1368 (Colo.App.1984), which states that the rule against the co-existence of express and asserted implied contracts finds an exception where "the implied agreement is based on conduct of parties subsequent to and not covered by the terms of the expressed contract." *Schuck* is not controlling, but informative. The conduct that forms the basis of Calabrese's claim of implied contract is "IAI's failure to act in accordance with Calabrese's authorized instructions by transferring $300,000 into an account controlled by Costello." Calabrese claims IAI thus breached its duty as a depository. This alleged failure may already be covered by the contract, and the allegation of it may require no new duties defined subsequent to the contract. However, while Calabrese will not be able to recover at trial on both a theory of expressed and implied contract, it should be allowed to go forward on both claims as alternatives.

## VI. Breach of Fiduciary Duty

██ Calabrese claims IAI breached its fiduciary duty by initiating the transfer to Costello. IAI claims it is entitled to summary judgment on the claim because it did not "initiate" the transfer, Costello did. IAI is apparently contesting Calabrese's use of the word "initiated" in the complaint. We are not persuaded that IAI need have *initiated* the transfer in order to have breached its fiduciary duty not to participate in the mismanagement of Calabrese's funds. IAI's argument is mere wordplay terms of at best tertiary relevance.

## VII. Conversion

██ Under Minnesota law, conversion is defined as " 'an act of willful interference with the personal property of another which is without justification or which is inconsis-

tent with the rights of the person entitled to the use, possession or ownership of the property.' " *Bloom v. Hennepin County,* 783 F.Supp. 418, 440 (D.Minn.1992), *quoting Dain Bosworth, Inc. v. Goetze,* 374 N.W.2d 467, 471 (Minn.App.1985). Generally, conversion applies only to tangible property or to intangible property that is merged in, or identified with, some document. *Id.* Minnesota courts have not defined the parameters of personal property, but the District of Minnesota did in *Bloom,* drawing on the work of the Eighth Circuit in *H.J., Inc. v. International Tel. and Tel. Corp.,* 867 F.2d 1531 (8th Cir.1989). Three types of intangible property are included in conversion: (1) documents in which tangible rights are merged; (2) tangible objects which are highly important to the exercise of an intangible right; and (3) rights without an accompanying conversion of something tangible, such as a corporation's refusal to register a transfer of shareholder rights. *Bloom,* 783 F.Supp. at 440.[6] Calabrese argues the third type of intangible property conversion applies here. We disagree.

██ The transfers of cash do not involve "the kind of intangible rights which are customarily merged in or identified with some document." *Prosser and Keeton on Torts* at 92 (1984). There is no claim here that any document confers an intangible right, and that conversion of the document is thus conversion of the right. Calabrese attempts to strain the definition of "conversion" when it states that IAI "changed the character of the property by its disbursement instructions[ ] to CNB." Yet Calabrese's only allegation is that IAI communicated a request for transfer of money. We perceive several problems with such a claim of conversion: cash is neither personal property nor does it have any extrinsic right attached to it which could be converted; there was no true dominion over the 'property,' *cf. Glenn Arms Associates v. Century Mort. & Inv.,* 680 P.2d 1315 (Colo.App.1984) (finding conversion where *defendant* placed funds in place other than escrow account

---

6. IAI misstates the holding of *Bloom* by characterizing it as stating that "only tangible personal property can be the subject of conversion." That

formulation is clearly contrary to the words of *Bloom* itself.

agreed upon by contract and refused to return funds when requested); Calabrese cannot support a claim the alleged act of interference with its property was "willful"; and the 'property,' or cash, did not have its character changed by IAI—that is, there could be no conversion of it by IAI to something other than cash.

## VIII.

Accordingly, it is ordered that:

(1) Defendant's Motion for Summary Judgment, filed March 26, 1993, is DENIED in PART and GRANTED in PART.

(2) Plaintiff's conversion claim is DISMISSED.